**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **JORGE REYES-GONZALEZ**<br><br>Plaintiff<br><br>V.<br><br>**FIRSTBANK PUERTO RICO;** unknown **INSURANCE COMPANIES X,Y&Z; ANGEL COLÓN; JANE DOE;** as well as any other Joint Tortfeasors.<br><br>Defendants | **CIVIL NO.**<br><br>**CIVIL RIGHTS CLAIM FOR DAMAGES; UNDER**<br>**42 USC §12101; 42 USC §2000e-5;**<br>**29 USC §621**<br><br><br>**TRIAL BY JURY DEMANDED** |

<u>**COMPLAINT**</u>

**APPEAR NOW** Plaintiff, **JORGE REYES-GONZALEZ**, through the undersigned attorney, and hereby state, allege and request as follows:

<u>**I.  INTRODUCTION**</u>

This is a civil action pursued by Plaintiff, Jorge Reyes-González, against his former employer, First Bank, Angel Colón, First Bank's insurer and against any other individual or entity whose identity is still unknown at this time, but who were responsible in all or in part for the discrimination by reason of disability, sex, age, negation of reasonable accommodation, retaliation, wrongful termination and violation of his civil rights as guaranteed by Puerto Rico and the United States Constitution.

As it will be explained fully hereinafter, Plaintiff is a fifty-two (52) year old man who worked twenty-three (23) years for First Bank. Plaintiff *will* prove, as the instant case progresses, that he was discriminated by reason of his disability for failure to provide reasonable accommodations, discrimination by reason of his age, discrimination by reason of his sex,  constant retaliatory acts for demanding safer working conditions due to obvious safety hazards in his workplace and, finally being

forced to quit his job due to the constant retaliation and failure to provide reasonable accommodations in the workplace as part of his known permanent disability[1], which was developed and worsened by the same retaliatory and discriminative treatment he was receiving by the defendants.

The forgoing constituted a known and preventable situation committed by his former employer. What plaintiff *only* requested from his former employer and supervisor, Mr. Angel Colon, was for them to provide safer working conditions as mandated by OSHA, and to enforce the same reasonable accommodations, guaranteed to him, and other employees.

Plaintiff will prove defendants *failed* to provide him with a reasonable accommodation, *failed* to take action against Mr. Colon's retaliatory and discriminative acts for requesting safer working conditions due to his demands to install a "man trap" door system, and later, for demanding the correction of  the faulty "man trap" installation, which would trap everyone inside without an escape route in case of a fire or any other emergency developed; and finally, Plaintiff will prove he was cornered to such a state that he was against his will forced to quit his job, all as part of a wrongful termination.

That said, Plaintiff will prove that resigning was the only reasonable sound alternative he had due to the constant retaliatory acts and onerous working conditions imposed by the employer with the purpose of inducing or forcing him to quit.

Finally, Plaintiff will prove that as part of the retaliatory acts, he was discriminated by reason of his age and gender.  To begin with, before he was terminated by his employer, Mr. Angel Colon did some relocating between branches, such as, assigning the younger less-experienced-women as managers in more challenging and stimulating branches, and one of them, was instructed specifically to

---

[1] Proscribed by his psychiatrist in many occasions and well documented in his personal file.

directly supervise Plaintiff's work, including visiting clients with the direct instruction from Mr. Colon to learn from her work-regime.

Also, it will be proved by the Plaintiff that Mr. Colon purposely relocated Plaintiff to a less challenging and competitive branch, and as an additional act of retaliation, Mr. Colon transferred his longtime individual and corporate client portfolios to another First Bank Branch in Caguas.  By seizing Plaintiffs longtime client portfolios, Plaintiff will prove it consequently reduced dramatically his chances of generating business with his longtime clients, which he attended for more than seven (7) years, and augmented the other branch deposits.   All the aforementioned discriminative changes where *camouflaged* by Mr. Colon as strictly business decisions, that ultimately limited Plaintiff's professional development.

Finally, the Plaintiff will prove that while he was professionally handicapped by Mr. Colón, the younger newly-hired female employees with limited experience as managers[2] where assigned to manage the highly competitive branches, with more responsibilities and opportunities to generate higher salary, commissions and business relations; and left the Plaintiff with little or no possibilities of professional growth at all.  To this day, Plaintiff suffers the actions followed by his former employer, and takes medications to control his anxiety.

## II.  JURISDICTIONAL BASIS AND VENUE

1. Jurisdiction in this case arises by federal question jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343(3), as Plaintiffs seeks relief under Titles I & V of the Americans with Disabilities Act, as amended, 42. U.S.C §12101 et seq.; 42 U.S.C §12111-12117; 12203 (hereinafter, ADA), which incorporates by reference sec. 706(f)(1) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sec 2000e-5 and 42 U.S.C §1981 et seq.

---

[2] One of them with <u>only</u> two (2) years of managing experience at the time.

2.  Jurisdiction also arises by federal question jurisdiction under 29 U.S.C. §621, et seq. as Plaintiffs seek relief under the Age Discrimination in Employment Act (hereinafter ADEA) which is intended to alleviate serious economic and psychological suffering of people between ages 40 and 65 caused by widespread job age discrimination against them and prevent their careers cut off by unreasonable prejudice.

3.  Plaintiff also invokes, pursuant to 28 U.S.C. §1367 this Honorable Courts Supplemental Jurisdiction over claims arising under Puerto Rico Law 44 of July 2, 1985, as amended, 1 PR Laws Ann. §501, et seq, (hereinafter "Law 44"), Puerto Rico Law 115 of December 20, 1991, as amended, 29 LPRA. §194, et seq, (hereinafter, "Law 115"), Puerto Rico Law 100 of June 30, 1959, as amended, 29 LPRA. §146, et seq. (hereinafter, "Law 100") and Puerto Rico Law 80 of May 30, 1976, as amended, 29 LPRA §185, et seq. (hereinafter, "Law 80")

4.  All conditions precedent to jurisdiction under ADA, ADEA, and Title VII, has been complied with accordingly.

5.  An employment discrimination by reason of sex, disability, age and retaliation was duly filed before the Equal Employment Opportunity Commission (hereinafter, EEOC) on March 31, 2015 and the Notice of Right to Sue from the EEOC was received on December 29, 2015.  The foregoing means this Honorable Court has jurisdiction, as we are well within the 90 day statute of limitations to file a civil suit for the instant case.

6.  Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. §1391 since the events or omissions giving rise to this claim occurred in this district.

### III.  THE PARTIES

7.  Plaintiff **JORGE REYES-GONZALEZ** (hereinafter referred to as "**PLAINTIFF**" or "**JORGE**") is of legal age, single, a resident of Rio Grande, Puerto Rico.  His address is Urb. Bonneville Gardens L-25 Calle 6,

Caguas, P.R., 00949. Plaintiff is a qualified 52-year-old man with a known documented permanent disability, as duly defined by the applicable statutes, which worked 23 years for First Bank.

8. Defendant **First Bank Puerto Rico d/b/a Sucursal Consolidated Mall (**hereinafter, First Bank or defendant) is a corporation or entity organized and existing under the laws of the Commonwealth of Puerto Rico with the capacity to sue and be sued who owns and operates various banking branches throughout Puerto Rico. Their current address as it appears under their documents of incorporation is 1519 Ponce De Leon Ave, Pda. 23, Santurce PR 00908 and the current address of the branch mentioned as part of the instant case is Ave. Gautier Benitez, Calle San Carlos, Caguas, PR 00725. This corporation is the former employer of the plaintiff who we alleged placed onerous conditions on his employment until his forceful resignation, discriminated against based on his age, sex and disability, and retaliated against him for demanding safer working conditions as mandated by OSHA.

9. Defendant **Angel Colon, (**hereinafter, Mr. Colon**)** is believed to be the Area Manager, and is believed to operate or had operated the Branch where the Plaintiff managed. It is hereby also alleged that Mr. Colon intentionally retaliated and discriminated against the Plaintiff by reason of his age, sex, and known permanent disability. Therefore he is jointly liable for the wrongful termination of Plaintiff.

10. Defendant **unknown INSURANCE COMPANIES X, Y & Z**, (hereinafter referred to as "Insurance companies") are unknown insurance companies organized and operating under the laws of Puerto Rico and/or a state in the United States of America, with their principal place of business in Puerto which, by information or belief, each of them provided general liability insurance coverage to the foregoing Defendant **FIRSTBANK,** as well to others responsible entities and persons for incidents such as the one brought in the caption case.

11. Defendants **JANE DOE** and **JOHN DOE** are unknown persons or entities which are citizens of Puerto Rico or any state, who are fictitiously named herein to be later replaced by their actual names which

may become known through further discovery in this litigation, and who may be therefore liable to Plaintiff, in whole or in part, jointly or severally, for the actions and/or omissions herein described and the damages suffered by Plaintiff.

## IV.  FACTUAL ALLEGATIONS

12. Plaintiff started working for First Bank 23 years ago, and performed the manager position at the moment of his wrongful termination. From the get go, this was a job that made Plaintiff happy, loved dearly, and excelled among his peers.

13. Since the very first moment he was hired by First Bank, Plaintiff excelled in all his duties and responsibilities, developing right away the trust of his clients and employees under his supervision.

14. Moreover, in all of his performance evaluations he always received outstanding reviews.

15. It is fair to say by now that the Aguas Buena's branch, which the Plaintiff managed before being relocated, withstood numerous unsafe incidents, to wit: five (5) assaults, a massacre in front of the facility, robbery, bomb threat, vandalism, shootings and arrests inside the branch for fraud, causing psychological problems to him and to the employees under his supervision, all due to security issues in the facility where the branch was located.

16. Because the Plaintiff was at all times interested in protecting his employees and clients, he requested the defendants to install what is known as a "mantrap" or the double door system in the entrance, to protect them from foreseeable future assaults in the workplace or any other issue of security concern that could develop.

17. His petition was not attended so he followed-up many occasions with persistence and determination. This was early 2014, and marked the beginning of the constant retaliatory actions and discriminatory acts taken by Mr. Colon and First Bank, as it will be shown hereinafter.

18. His manager, Mr. Colón, due to these constant follow-ups began treating the plaintiff *differently* and continued avoiding the petition requested to install the man-trap door system (hereinafter, mantrap). Since Mr. Colon wasn't taking any affirmative action to address this highly important security hazard, the plaintiff didn't have any alternative but to refer the petition to First Bank's Security Department[3] which works in conjunction with the Human Resources department.

19. After various emails requesting the mantrap installation, the petition was finally attended and the security company went to install the same. However, when defendants installed the mantrap, they found a very serious anomaly.

20. Such anomaly meant a safety hazard to all employees and clients inside the facility premises. They found out that there was neither a fire prevention nor a sprinkler system installed. As a consequence if a fire broke out or any other type of emergency, the mantrap doors would automatically shot and everyone would be trapped inside without being able to leave the premises, meaning if it was a fire they would all burn inside without an escape route available.[4]

21. When the plaintiff found out about this safety hazard, he immediately informed his superiors, human resources and the banks security department. As a desperate measure they decided to place a large stone that held the vault door right in front of a glass window that faced to the outside of their Branch, to use it as a tool to break the glass window and get everyone outside in case a fire emerged, all due to the fact that they didn't have an emergency exit door[5] and the mantrap installed was deprived of the required fire cable, thus, having that large stone around every day was the only remedy where they felt less worrisome while working.

---

[3] To wit; Mr. Jose Cruz, Mrs. Omayra Almonte and Mr. Alvin Martinez from the Security Department.
[4] Nova Com's technician, Jorge Reyes, can corroborate the allegations contained in averment 20 of the instant complaint.
[5] The emergency exit door had been requested numerous times before without success.

22. During this process, Mr. Colon continued retaliatory actions treating the plaintiff *differently* and even began to make changes in the plaintiff's schedule and work locations with the intent to make him uncomfortable in his work place.

23. Mr. Colon's sex, age and retaliatory-discriminative actions included the following, to wit: change of plaintiff's work schedule, alteration of performance evaluations, change of plaintiff's work location, changing his appointments with the phycologist, constant undermining and threatening vocabulary through emails and verbally; removing his longtime client portfolios by transferring them to a different branch he wasn't assigned to; relocating him to a less competitive and challenging branch while younger less experienced women where hired to manage the highly competitive branches. In addition, Mr. Colon commanded the plaintiff to work under the supervision of these new female managers, specifically he said to the Plaintiff that from now on he would be under the tutelage of the new hired youngster, and would work under the constant supervision a the new female manager so that he "could learn from her"

24. Due to these retaliatory and discriminative actions taken by defendants, the plaintiff was affected to such an extent that he had to be hospitalized in Capestrano and had to seek professional aid to help him cope with all that was happening in his workplace. He felt persecuted, undermined, suffered anxiety attacks and retaliated for demanding safer working conditions for him and his employees which he supervised.

25. As mentioned earlier, Mr Colón interfered even with plaintiff's serious medical appointments by *maliciously* requesting to meet with Jorge the same day of his appointment; regarding urgent matters but *surprisingly* never showed up to the meeting after the plaintiff had already cancelled his appointment.

26. Considering everything abovementioned, Plaintiff *duly* complied with all of the rules and regulations established by his employer to request a safe workplace and a reasonable accommodation, as well as, with the Occupational Safety and Health Act (OSHA).

27. It is very important to say, that OSHA, conducted an investigation brought by the plaintiff related to the alleged safety hazard caused by the faulty "man-trap" installed[6].  After the inspection conducted between June 1 and June 10 of 2015, OSHA's conclusion indicated that First Bank, was found culpable of maintaining a safety hazard in the work place, and for that reason, they penalized the defendant's for $3,150.00, which, at this day, we don't know if it was paid accordingly and the mantrap corrected.

28. OSHA specifically stated defendants breached 29 CFR 1910.36(d)(1) stating specifically that "Employees were not able to open an exit route door from the inside at all times without keys, tools, or special knowledge, and regarded the type of violation as "*serious*". Signed by the director of area for OSHA, Ramon A. Bonilla Miranda.

29. Getting back to the reasons for Plaintiff's hospitalization, the progress notes taken by his physician said that the Plaintiff had a psychological deterioration of his condition that required hospitalization, due to all the constant agony suffered in his work place.

30. However, after the intensive treatment he received, the plaintiff returned to work only to find out, that Mr. Colón *continued* the retaliatory actions, which became impossible to endure.[7]

31. Despite the promises made by Human Resources to the Plaintiff that they would take disciplinary actions against Mr. Colon, nothing happened and the retaliatory actions continued incessantly.

32. Mr. Colon continued threatening Jorge that he would be transferred to another less competitive branch without taking into consideration his years of excellence and experience.

---

[6] Inspection number: 1066891
[7] See notes by Dr. Madeline Jimenez

33. On one occasion, the plaintiff was given his performance evaluation by Mr. Colon and it was a positive performance review. The plaintiff, in turn, carried out the performance review of his subordinate which was also a very positive review.

34. However, a whole semester later, Jorge was required by Mr. Colon to change the performance evaluation of his subordinate, Ms. Enid Alejandro because, Mr. Colón *had* to alter the plaintiff's review. **This action was against company policy, and Mr. Colon knew it was against company policy.**

35. Plaintiff brought this issue to Human Resources and, as a consequence, was *reprimanded by Mr. Colon* for doing so. Mr. Colon specifically made a threating call to the Plaintiff emphasizing that it was now his turn to go to Human Resources and that he would later I would get back to him.  During that call, Plaintiff treatment towards Mr. Colon was respectful, however, Mr. Colon hang up the phone without say, ending the conversation abruptly.

36. Furthermore, defendant told the plaintiff to work under the tutelage of the newly hired female manager with less experience than the Plaintiff.  In addition, Mr. Colón assigned the new manager to manage a 90 million portfolio and kept emphasizing him the alleged superiority of her new female manager in front of other sub-managers like Mr. Raul Cruz.

37. Also, as of mid-2014, Plaintiff began to receive "memos" without cause or merit whatsoever, being this another type of retaliatory action taken by Mr. Colon.

38. Despite asking the defendant for reasonable accommodation, realizing that his employer, First Bank, would continue to disrespect and omit his rights as a disabled individual, continue to retaliate against him and discriminate by reason of his age and sex, plaintiff moved to file on March 31, 2015

the corresponding discrimination/retaliation charge with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as "EEOC").[8]

39. Plaintiff's EEOC charge resulted in First Bank's retaliatory actions to increase.

40. The retaliatory actions, failure to accommodate the plaintiff and the constant safety hazards in the work place were the cornerstone for Plaintiff's decision to quit his loved, highly valued and longtime job for 23 years at First Bank. Due to the foregoing, this was the only reasonable alternative Jorge had due to the onerous working conditions imposed by First Bank. At all times herein mentioned, this action taken by First Bank was with the only intent of inducing or forcing the Plaintiff to quit involuntary.

41. Plaintiff formally presented his letter resigning to his job on May 30, 2015 that is; he was forced to submit this letter because of his onerous working conditions.

42. This action previously stated, in conjunction with the other actions taken by defendant complies with the constructive discharge, protected by Puerto Rico applicable statutes abovementioned.

43. Finally, First Bank placed the Plaintiff in a potentially hazardous atmosphere in the workplace, not suitable for any human being to endure. Defendants have a legal responsibility they cannot divorce from, to provide a safe place for all their employees, as mandated by OSHA and constitution itself.

## V.  FIRST CAUSE OF ACTION – DISABILITY DISCRIMINATION PURSUANT TO THE APPLICABLE PROVISIONS UNDER ADA AND PR LAW 44

44. The factual allegations contained above are restated herein in full.

45. The events expressed herein constitute harassment and discrimination due to plaintiff's disability requests for reasonable accommodation and opposition to defendant's discriminatory practices, all in violation of ADA and Law 44.

---

[8] All the factual allegations brought by the Plaintiff in the EEOC claim are made part of this complaint and restated herein in full.

46. Plaintiff was a capable man that worked for a long period of time, 23 years to be exact, with excellent performance evaluations.

47. Law 44, states that its dispositions should be liberally interpreted in favor of persons with disabilities. See 1 LPRA 511a. In addition, according to Article 2 of Law 44, individual persons can be held liable for violation of said law.

48. Therefore, Mr. Colon and First Bank are individually and jointly liable towards Plaintiff under Law 44.

49. Also, as a manager, Mr. Colon's actions are deemed as those of the defendant, First bank, making said party vicariously liable under ADA and the other statutory laws applicable.

50. Defendants failed to accommodate Plaintiff according to his known disability and dismissed him outright when he demanded his right for reasonable accommodation, all in violation of 42 USC 12112(b)(5)(a) and 1 LPRA 507a.

51. Defendants failed to accommodate Plaintiff, even though defendants regarded Plaintiff as a disable person by the phycologist, limiting major life activities, and defendants knew or should have known about it

52. The Defendants, through their illegal harassment, discrimination by reason of age and disability and retaliation due to plaintiff's requests for reasonable accommodation caused damage to Plaintiff in violation of the Laws and constitution of both the Commonwealth of Puerto Rico and United States of America.

53. Pursuant to the foregoing articles, defendants respond jointly and severally for the damages related herein due to their negligent and culpable actions and omissions, and/or negligent actions and omissions of their employees, agents, representatives or contractors.

54. At all times herein mentioned, it was the *duty* of the Defendants, their agents, servants, and/or employees, to provide Plaintiff with the reasonable accommodation he requested for his well-documented disability.

55. At all times herein mentioned, it was the *duty* of the Defendants, to enforce the reasonable accommodation that was initially caused by the gross disregard of occupational safety standards and later, by the constant retaliatory actions by Mr. Colon.

56. Defendants, their agents, servants, and/or employees, intentionally *failed* to provide Plaintiff with the work environment that is required by law.

57. The Defendants, their agents, servants and/or employees *breached* their duty to provide Plaintiff with a reasonable accommodation due to his known disability.

58. The Defendants, their agents, servants and/or employees *breached* their duty to Plaintiff by failing to provide his with reasonable accommodation, that being the proximate cause of Plaintiffs' decision to quit his job.

59. The Defendants, their agents, servants and/or employees had actual or constructive notice of Plaintiffs well documented disability.

60. Defendants, their agents, servants and/or employees incurred in fault for allowing the continuous discrimination, retaliation and harassment, and they are, therefore, liable for all the damages suffered by the plaintiff, Jorge.

61. Defendants, their agents, servants and/or employees knew or should have known about the well documented disability of the Plaintiff.

62. Defendants knew or should have known that transferring Jorge would be construed as age and sex discrimination and retaliation due to the previous activities that had occurred.

63. Defendants knew or should have known that Plaintiff would be unable to perform his duties if transferred to another branch as he and the specialists[9] in medicine had indicated.

64. As a direct result of the Defendants' discriminatory acts, Jorge, has suffered mental and emotional pain and distress, to the point of being hospitalized.

---

[9] Psychiatrist and psychologist

65. As a direct result of the Defendants' discriminatory acts, Jorge, has altered his lifestyle, and has suffered emotional pain and suffering, loss of income and economic damages.

66. All of Plaintiffs emotional conditions are fully and causally related to the working conditions imposed by defendants, which generated his incapacity to work.

67. Plaintiff requests damages for violation of these provisions in excess of $1,000,000.00

## VI. SECOND CAUSE OF ACTION – RETALIATION PURSUANT TO FEDERAL LAW AND PR LAW 115 AND THE OCCUPATIONAL SAFETY AND HEALTH ACT AND PR LAW

68. The factual allegations contained above are restated herein in full.

69. By taking materially adverse employment actions as aforementioned against plaintiff for his demanding his rights under Title I of the ADA before the pertinent agencies, defendant violated Law 115.

70. As a result of defendant's discriminatory and retaliatory actions, plaintiff suffered economic losses and emotional damages (feelings of depression, anxiety, frustration among others) that required his to take anxiety pills, psychological meetings to control his emotions.

71. Various Hospitalizations are fully documented pursuant the actions taken by the Defendant.

72. By taking materially adverse employment actions as aforementioned against plaintiff for his demanding his rights under Title I of the ADA before the employer and the pertinent agencies, defendant violated Title V of said statute.

73. Defendant has intentionally violated section 503 of the ADA, 42 USCA 12203, by terminating Plaintiff's employment as a result of Plaintiff's exercising rights and privileges protected by the ADA.

74. Defendant's termination of Plaintiff's employment on the basis of his well-documented disability has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for future pecuniary losses, mental anguish, loss of enjoyment life, and other non-pecuniary losses.

75. OSHA prohibits discrimination by an employer against an employee for filing a complaint or for exercising any rights pursuant to such statute.

76. Defendant has acted maliciously and with reckless disregard of Plaintiff's state and federally protected rights by retaliating against Plaintiff, thereby entitling Plaintiff to punitive damages.

77. Law 115 provides for double compensation for violation of its provisions which are estimated in no less than $750,000.00

### VII. THIRD CAUSE OF ACTION – UNLAWFUL TERMINATION UNDER PR LAW 80

78. The factual allegations contained above are restated herein in full.

79. The events described herein constitute a classic constructive discharge by Plaintiff's employer, First Bank, thus they are in violation of Law 80.

80. The events describes herein constitute a discharge without just cause, all in violation of Law 80.

81. Plaintiff received evaluations in which he exceeded the requirements of his job, in fact, the last annual evaluation performed in 2014 for the year 2013, merited a raise of his salary.

82. Defendants never complied with the processes required under the Defendant's employee manual.

83. Defendants pressed and forced Plaintiffs decision to quit his loved, highly valued and longtime job at First bank and the actions taken by First bank were with the intent of inducing or forcing the Plaintiff to quit.

84. Plaintiff formally presented his letter of resignation on May 30, 2015, therefore it is understood, that Jorge was unlawfully dismissed from his employment on that same day.

85. All elements of Law 80 have been complied with; therefore, defendants owe Plaintiff the statutory severance payment according to his 23 years of employment with defendant.

86. Thus, since the Plaintiff worked for twenty (23) three years, defendants owe Jorge the "*mesada*" or severance pay, which is a salary equivalent to six (6) month of his salary at the moment of his

wrongful termination, as indemnity, plus an additional progressive compensation equal to three (3) weeks for each of his 23 years of service. See 29 LPRA 185a

## VIII. FOURTH CAUSE OF ACTION - PURSUANT TO THE APPLICABLE ADEA PROVISIONS AND PR LAW 100

87. All The factual allegations contained above are restated herein in full.

88. The ADEA prohibits employment discrimination against persons 40 years of age or older due to discriminatory actions against.

89. At all times herein mentioned, First Bank discriminated against Plaintiff by reason of his age and sex for continuously promoting and offering the younger female employees[10] the better business opportunities with higher commissions in the most competitive branches while denying the same benefits and promotions, business opportunities and higher commissions in the competitive branches to Jorge.

90. The events described herein constitute a classic discrimination by defendant by reason of age and sex against Plaintiff, thus they are in violation also of Law 100.

91. Law 100 provides for double compensation for violation of its provisions which are estimated in no less than $500,000.00.

## XV. FIFTH CAUSE OF ACTION – DIRECT ACTION AGAINST INSURER

92. The factual allegations contained above are restated herein in full.

93. The insurance companies of any named or unnamed defendants, the X,Y,Z & A Insurance Companies, are directly liable for the fault or negligence of the insured pursuant to 26 L.P.R.A. § 2001.

94. Pursuant to 26 L.P.R.A. § 2003, an action against an insurer may be brought separately or may be joined with an action against the insured.

---

[10] approximately 12 to 15 years younger

**X. DAMAGES AND RELIEF**

95. The factual allegations contained above are restated herein in full.

96. At all times herein mentioned, Plaintiff should be compensated in damages under Law 100, no less than **$500,000.00** which should be doubled upon application of such statute.

97. At all times herein mentioned, Plaintiff should be compensated in damages under Law 115, no less than **$750,000.00** which should be doubled upon application of such statute.

98. At all times herein mentioned, Plaintiff should be compensated in damages under Law 44, no less than **$1,000,000.00** which should be doubled upon application of such statute.

99. The economic and emotional damages referred to in the previous paragraphs are estimated in an amount of no less than **$3,500,000.00** after the application of double compensation mandated by Law 44, Law 115 and Law 100.

100. At all times herein mentioned, due to defendant's discriminatory practices with malice and/or reckless indifference to Plaintiff's federally protected rights, punitive damages should be awarded in the maximum amount permitted by law, pursuant to 42 U.S.C. §1981a.

101. As a result of the matters pled in the previous paragraph, defendant should be taxed with punitive damages in the maximum amount permitted by law so that said party is adequately punished and an example be made for all those employers who may be considering to incur in the same conduct.

102. Plaintiff is also entitled to reasonable attorney's fees as prescribed under 42 U.S.C. § 2000e-5(k) and the other applicable statutes.

103. Order the Defendant to make the Plaintiff whole by also ordering payment of the damages mentioned as follows:

   a. Damages for mental anguish and distress in excess **$500,000.00** or the maximum amount permitted by federal law.

b. Front pay for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.

c. Back pay for lost wages and benefits between the time of discharge and the court's judgment until retirement age.

d. Statutory severance pay in the amount established by law.

e. Award the Plaintiff the cost of his action, together with reasonable attorney's fees as stated before.

## XI.  TRIAL BY JURY DEMANDED

104.     Plaintiff hereby demands a trial by jury.

**WHEREFORE,** Plaintiff demand judgment against Defendants jointly and severally, in the

Amount of **no less than $4,000,000.00** as well as reasonable attorney's fees, and such further relief as to

this Honorable Court may deem just and proper under the law.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 22 day of March, 2016.

**MSG LEGAL CONSULTANTS PSC**
Centro Internacional de Mercadeo 1
100 Carr. 165, Suite 612
Guaynabo, PR 00908
Tel: (787) 706-1006
Fax: (787) 775-1672

s/Maritza Soto García
**Marita Soto García**
U.S.D.C No: 230301
Soto.maritza@legalmsg.com

**HERNANDEZ-OHARRIZ & SANTIAGO, P.S.C.**
Centro Internacional de Mercadeo 1
100 Carr. 165, Suite 612
Guaynabo, PR 00908
Tel: (787) 378-5630
Fax: (787) 787-775-1672

s/Edgardo Hernández-Ohárriz
**Edgardo José Hernández Ohárriz**
U.S.D.C. No. 229304
ehernandez@lawservicespr.com